**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CRIMINAL CASE NO. 2:13-CR-00012-MR-DLH-1**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | **MEMORANDUM DECISION** |
| vs. ) | **AND ORDER** |
| ) | |
| ) | |
| JACKIE LEE RATTLER ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Appeal of Detention Order" [Doc. 39].

## PROCEDURAL BACKGROUND

The Defendant and six other persons were charged in a nine count Indictment filed with the Court on June 4, 2013. [Doc. 1]. The Defendant was named in eight of the nine counts. Specifically, the grand jury charged the Defendant in: Count One with conspiring to possess with the intent to distribute Schedule I, II, and IV controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Counts Two, Three, and Six with possession with the intent to distribute a mixture or substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); Counts Four and Five with possession with the intent to

distribute a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1); Count Seven with possession with the intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); Count Nine with, while being an unlawful user of and addicted to a controlled substance[1], possessing numerous firearms, in violation of 18 U.S.C. § 922(g)(3).  [ Id. ].

The Defendant made his initial appearance on June 19, 2013, at which time the Government moved to detain him.  The Court entered an oral order of temporary detention pending the Defendant's arraignment and formal detention hearing.  The Defendant's arraignment was held before the Honorable Dennis L. Howell, United States Magistrate Judge, on June 24, 2013, following which the Defendant's detention hearing was held.

After reviewing the evidence presented by the parties, and the arguments of counsel, Judge Howell found that there was clear and convincing evidence that the release of the Defendant would create a serious risk of harm or danger to the safety of another person or the community.  [Doc. 27]. He further found, by a preponderance of the

---

[1] The grand jury did not identify the specific controlled substance.

evidence, that the release of the Defendant would create a risk of his flight. [ Id. ]. Accordingly, Judge Howell ordered the Defendant to be detained pending trial. Judge Howell explained his ruling on the record and by a written addendum filed June 25, 2013. [Doc. 32]. The Defendant thereafter filed a motion seeking review in this Court. [Doc. 39].

## STANDARD OF REVIEW

Title 18 of the United States Code, section 3145, governs the review and appeal of detention orders. This statute provides, in pertinent part, as follows:

> If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). In reviewing a motion to revoke or amend an order of detention, the Court reviews the Magistrate Judge's Order de novo. United States v. Stewart, 19 F. App'x 46, 48 (4th Cir. 2001). In so doing, the Court "must make an independent determination of the proper pretrial detention or conditions of release." Id. Even though Defendant's counsel has denominated his motion as an "Appeal of Detention Order," the Court will treat it as a motion to revoke or amend pursuant to § 3145(b).

3

## ANALYSIS

During the Defendant's arraignment, Judge Howell advised the Defendant that he faced a maximum term of imprisonment of not more than twenty years' imprisonment for each of the drug offenses alleged against him in the indictment, [FTR at 9:20:00 to 9:26:14] and thus, the Act's rebuttable presumption arose under the auspices of the grand jury's indictment alleging the Defendant violated the Controlled Substances Act in a manner that exposed him to a potential maximum term of imprisonment of ten years or more. [FTR at 10:35:45]. While Judge Howell correctly concluded the rebuttable presumption applied in this matter based upon the penalties applicable to Counts One, Two, Three, Six, and Seven.

At the beginning of the Defendant's detention hearing, the Government renewed its motion for detention and moved the Pretrial Services Report into evidence without objection. The Government then relied upon the Pretrial Services Report without putting forth any additional evidence. [FTR at 9:40:02]. The Defendant called the Government's case agent, Bureau of Indian Affairs Agent Billy Stites as a witness. [FTR at 9:40:53]. Agent Stites testified consistently with his affidavit filed in this District's case number 2:13CV18-MR-DLH, document number 1-1.

Agent Stites stated that, from Defendant's home at 120 Elsie Rattler Road, the Defendant sold 3 oxycodone tablets to a confidential source on February 28, 2012; that, from his home at 120 Elsie Rattler Road, the Defendant sold 10 percocet tablets to a confidential source on March 2, 2012; and that, from his home at 120 Elsie Rattler Road, the Defendant sold one quarter ounce of marijuana to a confidential source on March 10, 2012. [FTR at 9:51:36 to 9:52:25]. Further, Stites testified that on May 31, 2012, officers stopped a car coming from the Defendant's home and seized 31 oxycodone tablets the driver said were purchased from the Defendant; that on June 13, 2012, officers stopped a car coming from the Defendant's home and seized 119 oxycodone tablets, the driver of this vehicle telling officers s/he supplied oxycodone tablets to the Defendant; and that on November 20, 2012, officers stopped a car coming from the Defendant's home and seized 25 oxycodone tablets the driver said were purchased from the Defendant. [FTR at 9:52:30 to 9:53:53].

Agent Stites explained that on December 3, 2012, pursuant to a search warrant issued by this Court, he and other officers searched the Defendant's home at 120 Elsie Rattler Road. Seized from the home were 54 oxycodone tablets, 86 xanax pills, approximately 114.6 grams of cocaine, and approximately 3,072 grams (6.8 pounds) of marijuana. [FTR

at 9:53:55 to 9:45:52]. Finally, Stites reported that officers interviewed approximately 30 persons who claimed to have purchased oxycodone from the Defendant relating that these persons told law enforcement that they would barter personal property to the Defendant for drugs in lieu of cash. [FTR at 9:45:55 to 9:55:42]. The record is silent as to allegations of whether the Defendant engaged in any unlawful drug dealing from the date officers searched his home and seized contraband on December 3, 2012, until the date of his arrest on June 19, 2013.

Following Agent Stites' testimony, the Defendant introduced six exhibits, labeled Defendant's Exhibits A through F without objection by the Government. [FTR at 10:01:52]. The Defendant's exhibits, collectively, are a conglomeration of various medical records from numerous medical providers. The Defendant's medical providers, according to his exhibits, are his urologist in Asheville, Mission Hospital in Asheville, Harris Regional Hospital in Sylva, Cancer Care of WNC in Sylva, his gastroenterologist in Sylva, and the Medwest Swain Pain Clinic in Bryson City. The Court can summarize its findings with regard to the Defendant's exhibits in the following manner.

In October of 2012, the Defendant suffered a fall that led to back injuries. The Defendant was administered spinal blocks to address the pain

with marginal results. While undergoing an MRI of his spine, physicians incidentally found a mass on the Defendant's right kidney. Further evaluation determined the mass to be renal cell carcinoma. On March 6, 2013, the Defendant underwent surgery to remove the upper lobe of his right kidney. The Defendant was scheduled for a follow-up appointment July 10, 2013, to discuss results of his surgery and whether further medical intervention would be necessary. Following his kidney surgery, the Defendant complained of headaches and dizziness. On May 30, 2013, the Defendant had an MRI performed of his brain. The MRI disclosed an extra-axial mass-like area along the superior portion of the left parietal region consistent with prominent gyrus or congenital arachnoid cyst and did not have typical characteristics of metastatic disease. The Defendant reports swallowing problems and underwent a GI evaluation. The biopsy from this evaluation was negative and he was scheduled for a follow-up visit on July 15, 2013, for a further endoscopy. On June 13, 2013, the Defendant underwent a lumbar medial branch nerve block for back pain. The Defendant suffers from Type II diabetes and complains of numbness and loss of feeling in his extremities. The Defendant currently takes the following medications to address the listed ailments: percocet for pain, amitriptyline for mood disorders, flexeril for muscle relaxation, insulin for

Type II diabetes, OxyContin for pain, lisinopril for high blood pressure, and simvastatin for cholesterol control.

After the parties reviewed the Defendant's medical records, the Defendant called his mother, Elsie Rattler, as his next witness. [FTR at 10:13:25]. Ms. Rattler lives at 180 Elsie Rattler Road, within eyesight of the Defendant's home. [FTR at 10:13:55]. She was aware of the Defendant's following health conditions: kidney cancer, 2 "spots" on his brain, and no feeling in his feet and legs due to diabetes. [FTR at 10:14.37 to 10:14:52]. Mrs. Rattler testified that: she has a car and drives the Defendant to doctor appointments, her 23 year old grandson lives with her and that he has no criminal record, she has no criminal record herself, she has a telephone in her house, she would be willing to supervise the Defendant if he were released, the Defendant is a life-long resident of Cherokee except for his short stint in the Army, the Defendant is 54 years old, and if the Defendant were released to her custody and supervision, she would permit law enforcement officers to search her home. [FTR at 10:16:00 to 10:18:06]. The Government had no questions for Mrs. Rattler. [FTR at 10:18:30].

Upon the completion of Mrs. Rattler's testimony, both the Government and the Defendant rested and Judge Howell heard argument from counsel. [FTR at 10:18:54]. Defense counsel argued that the Defendant: had no prior

8

felony drug convictions, he never failed to appear for any of his prior misdemeanor convictions, he is a life-long resident of the Cherokee reservation, he has strong ties to the community with his wife and children near, he suffers from several serious medical conditions including on-going kidney problems, a brain cyst, diabetes that renders him nearly immobile, and GI problems, and he is seeing five different medical providers. With regard to drugs seized from the Defendant's home, counsel argued that some were validly prescribed to him by his doctors. With regard to the firearms seized from Defendant's home, counsel argued that none were alleged to have been used in any unlawful way by the Defendant nor were any of them stolen or without valid serial numbers. Defense counsel argued that the court could set conditions of release that included the third-party custodianship of Defendant's mother, house arrest with electronic monitoring, and the warrantless search of Defendant's release residence. Defense counsel asked the Court to release the Defendant on conditions. [FTR at 10:18:55 to 10:32:45].

In its argument, the Government contended that the Defendant had not rebutted the presumption of detention and that he faced significant charges. Further, the Government pointed to the Defendant's Pretrial Services Report and highlighted his past two convictions for simple assault,

one conviction for communicating threats, for receiving and possessing stolen property, and for possessing greater than ½ ounce of marijuana in 2006, and for aggravated possession of marijuana in 2007. The Government argued that the Defendant admitted to using marijuana, and while he faced no mandatory minimums, his drug offenses were serious, which included more than 100 grams of cocaine and more than six pounds of marijuana. Finally, the Government asserted that, according to Agent Stites, the Defendant has a network of buyers and suppliers of drugs. As a result, the Government asked the Court to detain the Defendant as a danger to the community. [FRT at 10:32:57 to 10:35:29].

At the completion of the parties' arguments, Judge Howell indicated the presumption of detention applied. [FTR at 10:35:45]. In determining whether the Defendant's detention pending trial was appropriate, Judge Howell then considered the factors set forth in § 3142(g) which are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –

10

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

Upon reviewing the evidence presented at the detention hearing, the Court appreciates the diligence with which Judge Howell considered the statutory factors. Looking to the first factor, the nature and circumstances of the offense, the Defendant's charges prescribing a penalty under 21 U.S.C. § 841(b)(1)(C) fall on the lower level of Congress' penalty scheme for drug offenses with the penalties under § 841(b)(1)(A) being the most severe and the penalties under § 841(b)(1)(B) occupying the middle ground. Nevertheless, the evidence discussed above indicates that the Defendant engaged in serious, on-going drug trafficking from his home that resulted in

substantial profits for him. Judge Howell was correct to weigh this factor against the Defendant's release.

While the weight of the evidence of the Defendant's drug-dealing livelihood, and the profits he made thereby, is strong, compelling, and substantial as found by Judge Howell, there is no indication of whether the Defendant reverted to his illicit conduct after law enforcement searched his house. Based on this, the language of the statute indicates that the Court may presume that the Defendant's past activities make him a clear, prospective danger to the community. Judge Howell was correct to weigh this factor against the Defendant's release.

With regard to the history and characteristics of the Defendant, Judge Howell considered the seriousness of the Defendant's state of health. The Defendant introduced evidence of three serious and ongoing health issues: renal cell carcinoma, type II diabetes with numbness in the extremities, and a brain cyst of unknown etiology. Judge Howell correctly opined that the U.S. Marshal could provide care for the Defendant. Further, the Defendant admitted, and the record supports, that he self-medicates with marijuana, a consideration supporting detention. On the other hand, the Defendant is a life-long resident of Cherokee and otherwise has strong family ties to the community. Further, the Defendant has never failed to appear in court for

previous tribal charges nor was he on probation, parole, or supervision at the time of the offenses alleged against him herein.  While a close call, this Court will not substitute its judgment for Judge Howell's finding that this factor weighs against the Defendant's release, especially since Judge Howell had the opportunity to hear and observe the witnesses during the Defendant's detention hearing.

Turning to the final factor, as Judge Howell found, the Defendant's risk of danger to the community cannot be overstated.  While the drugs seized by law enforcement would not necessarily indicate more than a small scale operation, the tens of thousands of dollars in profits generated by the Defendant through his drug sales, as well as the 30 persons interviewed by law enforcement who claimed the Defendant to be their supplier, would tend to indicate a much greater scale of operation and, consequently, greater risk of danger to the community. Judge Howell was correct to weigh this factor against the Defendant's release.

Finally, the Defendant states in his motion that "there exists conditions that the Court could impose that would reasonably ensure the safety of the community." [Doc. 39, ¶ 19].  The Defendant, however, neglects to discuss what such conditions would be as well as how such conditions would protect the public.

Having conducted an independent review of the FTR recording of the detention hearing, the Order of Detention, and the Addendum to the Order of Detention, and having considered the arguments of counsel, the Court concludes that the Magistrate Judge carefully considered each factor set forth in 18 U.S.C. § 3142(g) and properly concluded that there are no conditions or combination of conditions of release that will reasonably assure the appearance of the Defendant as required and the safety of other persons and the community. Accordingly, the Magistrate Judge's Order of Detention is affirmed.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendant's "Appeal of the Detention Order" [Doc. 39], which the Court construes as a Motion to Revoke or Amend pursuant to 18 U.S.C. §3145(b), is **DENIED,** and the Order of Detention [Docs. 27, 32] is hereby **AFFIRMED.**

**IT IS SO ORDERED.**

Signed: July 12, 2013

Martin Reidinger
United States District Judge